[No. 23705.    Department Two.    August 23, 1932.]

HILLMAN INVESTMENT COMPANY, *Respondent*, v. E. L. PILLING *et al., Appellants.*[1]

*Hyland, Elvidge & Alvord,* for appellants.
*Fred C. Brown,* for respondent.

MAIN, J.—This action was brought to have stricken from a deed a clause which, it is claimed, was fraudulently inserted therein without the knowledge of the plaintiff. The cause was tried to the court without a jury, and resulted in a judgment striking the clause complained of from the deed, from which judgment the defendants appeal.

The facts may be summarized as follows: The respondent, Hillman Investment Company, is a corporation organized under the laws of this state, with its principal place of business in Seattle, and C. D. Hillman is its president and managing officer. The cor-

[1]Reported in 13 P. (2d) 485.

poration will be referred to as Hillman. The appellants, E. L. Pilling, O. S. Matson and Paul N. Baker, owned a ranch in the province of Alberta, Canada, consisting of several hundred acres, or at least had an equity therein. Hillman owned a large quantity of land in Snohomish county, which is referred to as Birmingham, and also land in King county, which is referred to as Mercer Slough. The Birmingham land, or at least a considerable portion of it, had been platted into lots or tracts of smaller dimensions than those fixed by the government survey. Some of these tracts, the exact number not appearing, had been sold on contracts to various purchasers.

Sometime during the spring or early summer of the year 1930, Hillman and the appellants were brought together by one Louis Mathisen, and negotiations were entered upon with reference to the exchanging of the ranch for Birmingham and Mercer Slough. Mathisen at first was representing the appellants, but, as negotiations developed, he represented Hillman as well. August 13, 1930, a preliminary contract was entered into by the parties, looking to the exchange of the ranch for Birmingham and Mercer Slough. This contract contained a provision that "all lands sold under contract to date in Birmingham are reserved by the party of the first part [Hillman];" and the further provision:

"Also it is the intention only to convey all lands owned by Hillman Investment Company and C. D. Hillman, with exceptions referred to herein, and not otherwise."

Thereafter, and on September 10, 1930, a more formal contract was entered into, but it does not materially change the preliminary contract so far as this case is concerned. By the terms of the latter contract, Hillman was to advance sixty thousand dollars

to appellants, for which they were to give him a mortgage upon the land which he was to convey to them.

After the second contract was signed, at the request of Hillman and Mathisen, the Snohomish County Abstract Company prepared a report on the title of lands owned by Hillman in that county, and later a supplemental report was prepared. It seems to have been the intention of the parties to ascertain the particular lots or tracts which had been sold by Hillman on contract, in order that they would not be covered by the conveyance. Before the transaction was closed, a deed was drawn by Earl G. Dorfner, of the abstract company, covering Birmingham and Mercer Slough. Specific descriptions of the property cover approximately three pages of ordinary legal size paper. This deed was prepared at the request of one of the appellants and Mathisen, and at the end of the specific descriptions, at their request, there was added this provision:

"Also, in addition to the above described property, all other lands, if any, within Township 31 North, Range 3, East, and Range 4 East, W. M., now standing of record in the name of the grantor, together with all water rights, leases, rights of ways, easements, pipe lines, or other appurtenances to said lands owned by grantor."

This clause would include property which had been sold upon contract in either of the townships mentioned therein.

After this deed was drawn, the papers were all placed in escrow with the escrow officer of the Puget Sound Title Insurance Company of Seattle. November 1, 1930, all the parties met at the offices of that company for the purpose of finally consummating the exchange of properties and closing the transaction. As

to what occurred at this time, the evidence is in direct conflict in its material parts.

The appellants and their witnesses say that the escrow agent read the descriptions of the deed down as far as the additional clause above referred to, and then handed the deed to C. D. Hillman and called his direct attention to the clause that appeared at the end of the specific descriptions, which clause was the one above set out. This deed was not the one drawn by Dorfner because, subsequent to that and prior to November 1st, when the parties met, a number of different deeds had been drawn, as property which had been sold on contract was checked out of the descriptions.

As to what occurred on November 1st in the office of the title insurance company, Hillman contends that there was a conspiracy on the part of the appellants and Louis Mathisen to withdraw the deed from him when he finished reading the specific descriptions, and that, when he got down to the clause mentioned, the appellant Baker asked him whether the deed contained a description of the land in Mercer Slough, and thereupon Mathisen took the deed out of Hillman's hands, passed it to one of the appellants and then handed Hillman the mortgage. While the descriptions were being compared, according to the contention of Hillman, the escrow officer had the title report, Mathisen the mortgage and he the deed. With reference to what took place at this time, Mathisen testified:

"A. While we was reading we got down to the bottom of the legal description that was legally describing— Q. That is you mean the specific description. A. The specific description and then Mr. Baker was standing,—I believe he was standing between Mr. Hillman and myself, and he asked me if a certain piece of property on Mercer Slough had been put back in the deed which we had out of the deed at one time. Some individual had bought a piece of property and we had

it out and so Mr. Baker wanted to know if that description was in and I took the deed, right at that moment I took the deed out of Mr. Hillman's hand and Mr. Hillman said, 'And also—what is this? What is this?' and I reached over and took the deed away from him and handed it to Mr. Baker and Mr. Baker looked at the deed and handed the deed back to me and I took the mortgage from Miss Gran and handed it to Mr. Hillman to check. Q. You took it out of Mr. Hillman's hand just as he reached this clause that I have read to you? A. Yes. Q. Was there any pre-arrangement that that should be done? A. Yes. Q. Who was that prearranged with? A. It was arranged by Pilling, Baker and myself. Q. That you were to take that out of Mr. Hillman's hand at that time? A. Yes, sir. Q. For what purpose? A. So that he would not read the clause. Q. To attract his attention from this particular clause? A. Yes.''

Prior to the time that the transaction was closed, two of the appellants were in the office of the Snohomish County Abstract Company, and had a conversation with Dorfner with reference to putting a clause in the deed similar to the one in controversy. With reference to this, Dorfner testified:

''Q. Was there anything said about, they would put a clause like that in it and then subsequently fight out the question of the rights? A. Yes, there was such a conversation. Q. What was said about that? A. I don't remember it exactly, but I believe it was Mr. Matson,—Mr. Matson being the man with whom I talked more than anybody; that he thought they would try to include such a blanket clause in the deed and then they would fight out the rights of third parties.''

After the transaction was closed, Matson, one of the appellants, was in the office of the Snohomish County Abstract Company, and inquired of Dorfner if he had heard anything from Hillman, and asked if he had discovered the inclusion of the blanket clause in the deed. Dorfner testified:

"Q. Did he say anything to you as to whether or not Hillman had discovered this clause, or found it? Was there anything said with reference to that? A. After the instrument was recorded and our policy had been issued, Mr. Matson was in the office two or three times afterward, and asked if we had heard anything from Mr. Hillman and asked if he had discovered the inclusion of the blanket clause in the deed. Q. Now, that blanket clause—MR. HYLAND: Was that Matson or Mathison, the last person you referred to? A. Matson. Q. Calling your attention now specifically, Mr. Dorfner, to the clause at the bottom of Plaintiff's Exhibit 'F,' the last clause, I will ask you if that is the clause that was referred to that was under discussion? A. Yes, or a similar clause. I didn't see this one until the deed was recorded. I saw a record of it."

We see little in this case except a question of fact, and that is, whether Hillman, at the time he signed the deed covering Birmingham and Mercer Slough, knew that the blanket clause referred to was in the deed at the bottom of the specific descriptions. As indicated, the testimony upon this question is in conflict. Neither of the contracts mentioned nor the mortgage contained any such clause. The testimony, for the most part, upon both sides of the controversy, was given by interested witnesses.

The one witness who stands out distinctly as disinterested is Dorfner. If what he says with reference to a conversation with appellant Matson, after the deeds had passed and had been recorded, is true, it shows plainly that Matson at that time was conscious that Hillman, at the time the transactions were closed in the office of the title insurance company on November 1st, did not know that the blanket clause was in the deed. It was Matson's knowledge that Hillman had been deceived, undoubtedly, that prompted his asking the question. Dorfner, from a reading of his testimony, appears to us to have been a perfectly candid

and honest witness. The trial court said with reference to him:

"There can be no question about the fact that this matter was taken up with Mr. Dorfner of the Snohomish County Abstract Company, a better witness than whom I have never seen on the stand, a man who appeared to me as more desirous of stating the facts exactly as he understood them."

At the conclusion of the trial, the court, in an oral opinion, after reviewing the testimony of the various witnesses, said:

"Now there is just one question before the court in this case and that is whether or not Hillman ever knew that this particular clause was in that deed when he signed it. I know that he O. K.ed it at the bottom of each page; I know that, but if I were to believe— I can't believe, but if I were to find that Hillman spent a day in requiring property to be eliminated from deed after deed after deed and noticing each time and permitting the clause to remain, in which itself carried back into the deed not only the property which he was deleting but all the property that he had in that vicinity, in Township Thirty-one (31), North Range Three (3) and Range Four (4), he is the biggest fool in the world and that he couldn't keep his property long enough to pay the taxes on it. I don't believe those things. I know that Hillman did not know that clause was in that deed when he signed it.

"Now the fraud is so apparent and bristling that not one of them denied the fact that he was seeking to put this in and put it across over Hillman; not one of them denied that. They got together and discussed it so much that it became disgusting, not with Hillman because Matson said he never discussed that clause with Hillman; that he never heard it discussed with Hillman, notwithstanding the fact that he was in the office at the time that Miss Gran got up and made that declaration.

"I am not sparing anybody and I am not saying that I think Hillman would tell the truth, but I am saying

that every physical fact and every circumstance presented or testified to by any witness in this case gives the lie to their testimony to the effect that Hillman knew that that clause was in the deed. Every meeting that they had gives the lie to that testimony. So I am absolutely convinced beyond all possible doubt that Hillman never knew that clause was in the deed and I don't base that upon a word that he says, though he gave the appearance on the stand of telling the truth. If he were not in the case at all it wouldn't make any difference, or if he had never taken the witness stand.

"The deed will be reformed to eliminate that clause."

In this case there was a large abstract prepared by the appellants and a supplemental abstract of considerable size prepared by the respondent, both of which we have disregarded, and we have read the testimony in its entirety, as it appears in the statement of facts.

It would serve no useful purpose to further review or discuss the testimony. After reading and considering the testimony and the exhibits, we are satisfied that the trial court reached the correct result. Much is said in the appellants' brief about C. D. Hillman and his testimony, but we are in accord with the view of the trial court that his testimony could be entirely disregarded and the result would be the same.

There is the further contention that, as a matter of law, Hillman should have known that the clause in question was in the deed, and that the evidence fails to meet the requirement of the rule, in such cases, that it must be clear and convincing. If the views of the trial court are correct, with which we are in accord, it cannot be said, as a matter of law, that Hillman did not exercise ordinary business sense and reasonable prudence in not discovering that he was being tricked into signing a deed which contained a clause to which he had not agreed. We are also of the view that it cannot

be held, as a matter of law, that the evidence upon which the judgment is based was not clear and convincing.

The judgment will be affirmed.

TOLMAN, C. J., HOLCOMB, BEALS, and MILLARD, JJ., concur.